# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT KEITH ARLOW**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:13cv99 |
| ) | **Electronic Filing** |
| **CAROLYN W. COLVIN**, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

March 28, 2013

**I.   INTRODUCTION**

Plaintiff, Robert Keith Arlow ("Plaintiff" or "Arlow") initiated this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the decision of the Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner" or "Colvin") denying his application for disability insurance benefits ("DIB") or supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff protectively filed an application for DIB and SSI on November 29, 2011, alleging disability since November 6, 2011, due to crushed vertebrae, memory and balance problems, seizures, heart attacks, and a broken leg. R. 110-112, 162, 164. Arlow amended his onset date to December 31, 2010. R. 11. The applications were initially denied on or about February 29, 2012, and Plaintiff timely requested an administrative hearing. R. 110-111, R. 121-122.

A hearing was held on August 1, 2012, before Administrative Law Judge David F. Brash (the "ALJ"), a Vocational Expert ("VE") and Plaintiff, who was represented by counsel, appeared and gave testimony. R. 31-81. The ALJ issued a written decision on August 28, 2012, finding that Plaintiff was not disabled under the Act because he could perform a full range of

light work. R. 24-26. Plaintiff timely requested a review of the ALJ's decision to the Appeals Council, which was denied on November 21, 2012, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C. § 405. R. 1-3. Plaintiff subsequently filed his appeal with this Court.

Plaintiff filed prior applications for DIB and SSI that were denied at the initial determination level on January 21, 2009. R. 11, R. 181-183. The ALJ found that the determination of January 21, 2009, was entitled to administrative finality, and found no basis to justify reopening those applications. 20 C.F.R. § 404.957(c)(1), 20 C.F.R. §§ 404.989, 416.1489. The ALJ further determined that any discussion of the evidence prior to January 21, 2009, was for historical and contextual purposes only. R. 11.

## II. STATEMENT OF THE CASE

Plaintiff was born on February 21, 1959, making him fifty-three (53) years old on the date of the hearing. R. 39. Plaintiff was a high school graduate and had a "small amount of college." *Id.* Plaintiff had earnings from 2006 through 2010, and had twelve (12) different places of employment over that time period. R. 166-170. Plaintiff has past relevant work as a cashier, service technician, stock person and telemarketer sales person. R. 186. Plaintiff lived alone, received food stamps and medical insurance, and relied on help from a friend for help with his rent. R. 40.

On July 30, 2008, was admitted to the hospital with a diagnosis of spinal stenosis secondary to a compression fracture of L2 of indeterminate age. R. 290, 292-293. Plaintiff indicated that he had fallen four (4) to five (5) days previously and had hit his back on the wall and floor. R. 292. On July 31, 2008, Plaintiff was given an MRI of the lumbar spine which showed an acute "moderate to severe" compression deformity of L2 with posterior buckling of

the L2 cortex and moderate encroachment of the thecal sac. R. 307. That same day, Plaintiff was transferred to Allegheny General Hospital. R. 297-298.

On July 8, 2010, Plaintiff injured his right hand and wrist at work and was treated in the emergency room of the Beaver Medical Center. R. 359. X-rays showed no fracture in the wrist or hand, and Plaintiff was diagnosed with a right hand sprain and wrist sprain. R. 360. On July 14, 2010, Plaintiff presented to the Beaver Medical Center emergency room complaining of chest pains. R. 328. Cardiac enzymes were negative for myocardial infarction, and a stress test was normal. R. 329, 333. Plaintiff was admitted, and testing revealed no evidence of cardiac occlusion, normal LV size and systolic function, a left ventricle ejection fraction of 67%, and no scintigraphic evidence of infarction or ischemia. R. 330, 431.

On November 5, 2011, Plaintiff presented in the emergency room after he fell while walking up steps. R. 363. A physical examination found Plaintiff to be "alert, oriented and somewhat intoxicated." X-rays showed a fracture of his fibula. R. 363, 365. Plaintiff returned to the emergency room on November 6, 2011, with what was described as "a witnessed grand mal tonic-clonic seizure." R. 367. A CT scan revealed frontal encephalomalacia, which was present in 2008, and was suspicious for a previous skull fracture. *Id.* Plaintiff was given an EEG on November 7, 2011, which was normal. R. 366. Plaintiff was discharged on November 8, 2011, after undergoing an open reduction and syndesmotic fixation of the right ankle. R. 382, 391.

On February, 16, 2012, a Disability Evaluation was performed on Plaintiff by Daniel G. Christo, D.O. ("Dr. Christo"). R. 455. After a physical examination of Plaintiff, Dr. Christo made the following evaluation:

    1.    Seizure disorder, currently stable by documentation with an unremarkable neurological exam;

3

2. Surgical repair of his right ankle, currently still on the postop and rehab phase with good clinical function of the ankle mortise, with mild dysfunction of the right lower extremities secondary to his ankle;

3. Vague history of "heart attack" with no accompanying data, unremarkable clinical exam and what sounds like he had a possible catheterization, but again no documentation and his history describes no specific intervention; and

4. History of narcotic and alcohol abuse.

R. 458. Dr. Christo completed a medical source statement regarding plaintiff's ability to perform work-related physical activities. R. 460. Dr. Christo found that Plaintiff could lift and carry twenty-five (25) pounds frequently, he could stand and walk for six (6) hours in an eight (8) hour workday, and Plaintiff had no limitations with regard to sitting, pushing and pulling. R. 460. Dr. Christo also found that Plaintiff: could bend, kneel, stoop, crouch, balance and climb occasionally; had no limitation on reaching, handling, fingering, feeling, seeing, hearing or speaking; and had no environmental restrictions. R. 461.

On February 28, 2012, a state agency medical consultant , Paul Fox, M.D. ("Dr. Fox"), performed a physical residual functional capacity ("RFC") assessment based upon a review of Plaintiff's medical and vocational records. R. 89-91. Dr. Fox found that Plaintiff could occasionally lift and carry twenty (20) pounds and could frequently lift and carry ten (10) pounds, but had the following limitations: he could climb ramps/stairs, balance, stoop, and crouch frequently; kneel and crawl occasionally; never climb ladders, ropes or scaffolds; and should avoid all exposure to hazards such as machinery or heights R. 90-91. Dr. Fox noted that Plaintiff's seizures were well controlled on antiepileptic drugs R. 91.

The ALJ found that Plaintiff had the following severe impairments:

Status-post right ankle fracture and surgical repair, status-post burst fractures and lumbar degenerative disc disease (DDD), seizure disorder, status-post TBI (encephalomalacia), major depressive disorder (MDD) with psychotic features, psychotic disorder, generalized anxiety disorder (GAD) and post-traumatic stress disorder (PTSD) . . .

R. 14. The ALJ found, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Based upon the evidence of record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with several restrictions. R. 17. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms regarding his impairments lacked credibility. R. 18. With regard to the medical evidence, the ALJ found that Plaintiff received fairly conservative treatment for his physical impairments, and that his medical record established that such impairments did not prevent him from engaging in work within his RFC and was inconsistent with, and not supportive of, a finding of disability. *Id.*

The ALJ also found that Plaintiff's daily activities of living, which were relatively full and independent, were consistent with his RFC and inconsistent with a disability level of function. R. 21. The evidence shows that Plaintiff prepares meals, completes household chores with help, goes outside every two (2) or three (3) days, shops every two (2) days, manages his finances and is independent in his personal care. *Id.* Though Plaintiff was found to be unable to return to his past relevant work, the ALJ found that based on Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. R. 25. Accordingly, the ALJ found Plaintiff was not disabled under the Act, and his applications for DIB and SSI were denied.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or

6

her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

IV. **DISCUSSION**

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found

8

disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505.

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ's RFC assessment was inconsistent with the opinion of the consultative psychological evaluator, Julie Uran, Ph. D. ("Dr. Uran") and that the ALJ failed to properly credit the opinions of Plaintiff's treating physician and therapist in assessing his RFC. With respect to RFC assessments, ALJ's are not required to include every alleged limitation in their hypotheticals and RFC assessments; their responsibility is to "accurately convey" only "*credibly established limitations*" which "are medically supported and otherwise uncontroverted in the record." *Rutherford v. Barnhart*, 399 F. 3d 546, 554 (3d Cir. 2003). An RFC assessment is not a medical assessment, but an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2006); SSR 96-5p, 1996 SSR LEXIS 2. The responsibility of assessing a claimant's RFC rests with medical experts at the state agency level, with the ALJ at the administrative hearing level, or with the Appeals Council. *Id.* The ALJ is required to conduct an independent analysis of the relevant evidence and develop an appropriate RFC based upon that evidence. 20 C.F.R. §§ 404.1545, 416.945. It is the ALJ's exclusive duty, as fact finder, to make an RFC assessment. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see Richardson v. Perales*, 402 U.S. 389, 399 (1971)(recognizing that the duty to weigh the evidence rests with the trier of fact, not the reviewing court).

In her Clinical Psychological Evaluation, Dr. Uran found that Plaintiff's "[p]rognosis would be deemed fair in terms of high-level functioning and personality integration." R. 449.

Dr. Uran assigned Plaintiff a Global Assessment of Functioning ("GAF") score of fifty-five.[1] Further, Dr. Uran assessed Plaintiff to have: (1) no restriction on his ability to understand and remember short, simple instructions, and to carry out short, simple instructions; (2) slight restriction on his ability to make judgments based on simple work-related decisions , to interact appropriately with supervisors, and to respond appropriately to changes in a routine work setting; (3) moderate restriction on his ability to understand and remember detailed instructions, interact appropriately with the public, and interact appropriately with co-workers; and (4) marked restriction on his ability to carry out detailed instructions and to work pressures in a usual work setting. R. 453. Based on such opinions, the Court finds that Dr. Uran's evaluation supports the ALJ's assessment of Plaintiff's RFC.

Plaintiff also argues that the ALJ failed to give the opinions of Plaintiff's treating physician, Ron Garbutt ("Dr. Garbutt"), and his therapist, Jane Thurston ("Thurston"), controlling weight in determining the RFC. Plaintiff contends that a Mental Residual Functional Capacity Assessment was completed on July 6, 2012, and the limitations set forth therein preclude any type of gainful employment. R. 502-508. The assessment was prepared and signed by Thurston and adopted by Dr. Garbutt on July 27, 2012. R. 508. Thurston indicates that she saw Plaintiff for two (2) one-hour sessions, but because of her "caseload demands" was unable to see him more often. R. 505.

---

[1] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF rating falling between fifty-one and sixty *may* be indicative of an individual who exhibits "moderate difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* experience "conflicts with peers or co-workers." *Id.*

In the assessment, Thurston asserts, *inter alia*, that Plaintiff was unable to use public transportation without having a panic attack, had recurrent severe panic attacks, had a declining I.Q., suffered hallucinations and delusions, had pathologically inappropriate suspiciousness or hostility, required a highly supportive living arrangement for seven (7)years, had complete inability to function independently outside of the area of his home for seven (7)years, and had the ability to manage benefits in his own best interest. R. 505-508. Thurston also states that Plaintiff had marked limitations in all mental activities necessary to sustain a normal workday or work week (R. 503-504), and had extreme limitations in activities of daily living, maintaining social functioning, and maintaining concentration persistence and pace. R. 507. The assessment indicates that Plaintiff had four (4) or more episodes of decompensation within a twelve (12) month period. R. 507.

Generally, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). It is the ALJ, however, not the treating or examining physicians or State agency consultants that must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although the opinions of treating and examining physicians often deserve more weight than the opinions of doctors who review records, the Third Circuit clearly holds that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) *see also* 20 C.F.R. § 404.1527(d)(1)–(2). State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

Moreover, Thurston is a social worker, not a treating physician. A treating source is the applicant's own "physician, psychologist, or other acceptable medical source" who has provided the applicant with medical treatment or an evaluation. 20 CFR §404.1502. A treating source's opinion is generally given more weight than that of other medical experts' of record because they have treated the applicant longer, and so are likely to provide a "detailed, longitudinal picture of [the applicant's] medical impairment(s)." 20 CFR §404.1527(c)(1)-(2). A social worker's opinion is not "an acceptable medical source" and is thus not entitled to controlling weight as a treating source. *See i.e. Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. Pa. 1999) (Finding that a chiropractor was not "an acceptable medical source" entitled to controlling weight). Acceptable medical sources are:

> (1) Licensed physicians (medical or osteopathic doctors);
>
> (2) Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only;
>
> (3) Licensed optometrists, for purposes of establishing visual disorders only (except, in the U.S. Virgin Islands, licensed optometrists, for the measurement of visual acuity and visual fields only). (See paragraph (f) of this section for the evidence needed for statutory blindness);
>
> (4) Licensed podiatrists, for purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle; and
>
> (5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only. For this source, "qualified" means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence from the American-Speech-Language-Hearing Association.

20 C.F.R. § 416.913.

Further, a medical opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [not be] inconsistent with the other substantial evidence in your case record." 20 CFR §404.1527(c)(1)-(2). The ALJ gave several reasons why he gave little weight to the assessment made by Thurston and later adopted by Dr. Garbutt :

(1) The assessment is based upon limited time with Plaintiff;

(2) There is no evidence in the record to support the conclusion that Plaintiff had declining I.Q. scores or severe panic attacks;

(3) There is no indication Dr. Garbutt spent any significant time with Plaintiff, and the substance of the opinion was not prepared by an acceptable medical source;

(4) The opinion was internally inconsistent;

(5) It was noted that Plaintiff needed a highly supportive living arrangement for seven (7) years, which was inconsistent with the fact that he had performed substantial gainful activity within that seven (7) year period, and inconsistent with his numerous activities of daily living; and.

(6) The finding that Plaintiff was unable to use public transportation was inconsistent with his statement that he used public transportation.

R. 22. The ALJ was, therefore, justified in giving little weight to the opinions of Thurston and Dr. Garbutt as the opinions were unsupported by the evidence and inconsistent with the record.

Based on the above, therefore, the Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial record evidence.

Plaintiff also argues that his hypothetical to the VE based upon limitations imposed by Dr. Uran resulted in a finding by the VE that Plaintiff would be incapable of performing any of the jobs the VE identified. Though Plaintiff did not identify this matter as an issue before this Court, the Court will briefly address the issue.

After the VE opined that Plaintiff was precluded from performing past relevant work, the ALJ presented the following hypothetical:

13

> Assume a hypothetical individual born on February 21, 1959, with a high school education and above. Assume further, . . .the individual has the residual functional capacity to perform work at the light exertional level, except he can never climb a ladder, rope or scaffold; can only occasionally climb ramps or stairs; can only occasionally balance, stoop, kneel, crouch, or crawl; must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; is limited to understanding, remembering, and carrying out simple instructions and performing simple routine tasks; is limited to only occasional and superficial interaction, such as sales and negotiation; and is limited to low-stress work environment, and I'll define that as no production rate pace work, but rather goal-oriented work with only occasional and routine charge in work settings. Are there any occupations an individual with such profile and RFC could perform?

R. 74-75. Based upon the question, the VE found three (3) jobs at the light and unskilled level existing in significant numbers in the national economy that Plaintiff was capable of performing.

> The ALJ then added:
>
> [A]ssume with regard to the interaction component that, rather than occasional interaction, the individual is limited to no work-related contact with coworkers or the public, and only occasional supervision, such [as] if the work would be essentially isolated. Would that change your response?

R. 75-76. The VE indicated that under this change only the "cleaner job" would remain, The database would be eroded by fifty percent, "providing for . . . or limiting to essentially off-hours cleaning, like office work . . ." R.76. The VE found that all jobs would be eliminated if the same person would be off-task for a period of no less than 25 percent of each workday in addition to the regularly scheduled work breaks; or in the alternative, absent no less than one full day per workweek. *Id.*

In posing a hypothetical question to a vocational expert, "the ALJ must accurately convey . . . all of a claimant's credibly established limitations" as determined in the RFC. *Id.* If the hypothetical question does not include "medically undisputed evidence of specific impairments" in the record then "the [VE's] response is not considered substantial evidence." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). The Court finds that the ALJ's hypothetical questions to the VE were consistent with the functional limitations endorsed by Dr. Uran.

14

Plaintiff's attorney, then, asked the VE to assume the same hypothetical as set forth by the ALJ, including if "[the individual's] missing work four days or more a month" and in addition added: "marked limitations in carrying out detailed instructions; extreme limitations in making judgments on simple work-related decisions, marked limitations in interacting appropriately with the public, as well as supervisors and coworkers." R. 77. The VE found that there would be no jobs available for such individual. R. 78. This specific question, however, misstated the evaluation of Dr. Uran, who found the following limitations: (1) no restriction on his ability to understand and remember short, simple instructions, and to carry out short, simple instructions; (2) slight restriction on his ability to make judgments based on simple work-related decisions , to interact appropriately with supervisors, and to respond appropriately to changes in a routine work setting; (3) moderate restriction on his ability to understand and remember detailed instructions, interact appropriately with the public, and interact appropriately with co-workers; and (4) marked restriction on his ability to carry out detailed instructions and to work pressures in a usual work setting. Moreover, these restrictions were in addition to restrictions already added by the ALJ which caused the VE to eliminate all jobs in the national economy. Further, counsel's hypothetical was not supported by the evidence in the record.

Plaintiff's counsel then asked the VE to assume the ALJ's initial hypothetical and added just the "moderate" and "marked" restrictions from Dr. Uran's evaluation. The Court agrees with the ALJ's decision to reject counsel's hypothetical questions and the VE's answer's thereto. Counsel's hypothetical does not accurately represent the evidence in the record. Accordingly, the Court finds that the ALJ's decision was supported by substantial evidence with regard to the VE's testimony.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion for Summary Judgment will be denied. The decision of the ALJ is affirmed. An appropriate Order follows.

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Ryan S. Woodske, Esquire
Paul Kovac, AUSA

(*Via CM/ECF Electronic Mail*)